# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PASCAL GEDEON,<br>    Plaintiff | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 22-CV-3595 |
| THE ATTORNEY GENERAL, *et al.*,<br>    Defendants | :<br>:<br>: |

## MEMORANDUM

**PRATTER, J.**                                                               OCTOBER 12, 2022

Pascal Gedeon, a pretrial detainee[1] in custody at the Federal Detention Center Philadelphia ("FDCP"), has filed this civil rights action asserting claims against the Bureau of Prisons, FDCP, officials of the United States Department of Justice and various officials employed at FDCP.[2] Mr. Gedeon also filed a Motion to Proceed *In Forma Pauperis*. For the following reasons, the Motion to Proceed *In Forma Pauperis* will be granted, certain claims will be dismissed with prejudice and the balance of Mr. Gedeon's claims will be dismissed without prejudice.

---

[1] Mr. Gedeon is a pretrial detainee being held on charges of distribution and attempted distribution of child pornography. *See United States v. Gedeon*, No. 21-CR-210 (E.D. Pa.)

[2] The Justice Department officials Mr. Gedeon names are the Attorney General of the United States, Assistant Attorney General of the United States, Deputy Attorney General of the United States, Associate Attorney General of the United States, "the Detention Trustee," and the Director of the Bureau of Prisons (collectively "the Justice Department Defendants"). He names as defendants the following officials at FDCP: the Warden, Assistant Warden, disciplinary hearing officer, Officer Valentine, Officer Freeman, five other unknown officers, R. Kistler, and Dr. Dalmasi. All Defendants are named in their official and individual capacities.

1

## I. FACTUAL ALLEGATIONS

Mr. Gedeon asserts that he has been detained at FDCP since May 25, 2021 where he has been requesting unspecified medical treatment but has been told there is nothing wrong with him. (Compl. (ECF No. 2) at 2.)[3] He states that he has experienced headaches, palpitation, shortness of breath, bloating, sleepiness even after sleeping 12 hours, chest pain, dizziness, constant nasal congestion, and he has lost consciousness. (*Id.*)

Unrelatedly, he asserts that on January 25, 2022, he was "locked in the yard" when it was cold. He complained to Defendant Ms. Freeman who allegedly became angry and pressed her body alarm "to send me to the SHU." (*Id.*) It appears that at some point during Mr. Gedeon's interaction with Ms. Freeman, he broke a window to "[e]scape from the cold." (*Id.* at 3.) Freeman prepared an incident report claiming she told Mr. Gedeon to wait while she tried to get help, and falsely stated she gave him an order to stop banging on the window after hearing him do so, and that Mr. Gedeon ignored her. (*Id.* at 2.) According to Mr. Gedeon, this is the second time Freeman locked inmates in the yard during cold weather. (*Id.*) Ms. Freeman allegedly took all of Mr. Gedeon's property when he was sent to the SHU and, when he returned to his usual cell, several items were missing. (*Id.* at 2-3.)

At the hearing for disciplinary charges for refusing to obey an order and destroying property over $100, Mr. Gedeon claims the witnesses he identified to testify about Ms. Freeman's acts were not provided. (*Id.* at 3-4.) Defendant Officer Valentine, who appears to be the Disciplinary Hearing Officer ("DHO") who conducted the hearing,[4] allegedly "modified" his

---

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

[4] Mr. Gedeon's caption lists "DHO, Officer Valentine" among the other defendants, each of whose names are separated by commas. The Clerk recorded "DHO" as a separate defendant from Officer Valentine.

2

statements and "made it seem as [Mr. Gedeon] was not providing any relevant defense." (*Id.* at 3.) When Officer Valentine allegedly realized that Ms. Freeman had made a false statement, "he excused by finding it 'too repetitive'" and did not report the false statement. (*Id.*) Mr. Gedeon asserts he was denied the right to present a "necessity" defense to the disciplinary charges, which he alleges "allow[s] breaking the law when there is no reasonable alternative." (*Id.*) As a result of being found guilty of the charges, Mr. Gedeon was denied access to the prison commissary for 90 days and could not buy a new comb and hair ties, which he claims are "basic necessities of [a] black inmate with long, natural, kinky hair."[5] (*Id.*)

On the first day he was housed in the SHU, a female staff member asked him "why I broke the window" – apparently a reference to conduct reported by Ms. Freeman that resulted in Mr. Gedeon's disciplinary charge. (*Id.*) Mr. Gedeon concedes that he told the staff member that it is against his rights to be detained in cold conditions and he was trying "to get Ms. Freeman on the matter [but] all she did was send[] me to the SHU before she relized [sic] the window was broken." (*Id.*) A different unidentified staff member allegedly then told Mr. Gedeon "you think we violated your rights, more violation is about to happen here (in the SHU)." (*Id.* (parenthetical in original).) Once he was assigned to a cell in the SHU, an unidentified staff member refused him food stating that he had been offered and refused food earlier, which was allegedly untrue. (*Id.*) The same officer showed him two mattresses and then given the thinner of the two. (*Id.*) Mr. Gedeon contends he was denied access to his defense counsel for about six weeks, his requests to use the law library were denied, and a computer used to view discovery in his criminal case had not been working for a month. (*Id.*) He claims he is assigned to a cell without

---

[5] The Court understands Mr. Gedeon to make the allegation about his lack of a comb and hair ties as an example of how he was damaged by his placement in the SHU rather than alleging a separate claim based on a violation of his equal protection rights.

3

a sink and has to wash and brush his teeth over the toilet, he is not allowed out of his cell for long periods, and has no water to drink. (*Id.*)

Attached to the Complaint is the incident report signed by Defendant Freeman charging Mr. Gedeon with destruction of property in which she asserted that Mr. Gedeon broke a window. (*Id.* at 4.)[6] The report of DHO Valentine, also attached to the Complaint, recites that Mr. Gedeon received written notice of the charge on January 25, 2022, the date of the incident, and a hearing was conducted on February 16, 2022, at which Mr. Gedeon requested the help of a staff representative. (*Id.* at 5.) Non-defendant Dr. Daniels appeared as his representative and stated she had the opportunity to review video evidence, which was also reviewed by DHO Valentine, and she had the opportunity to speak with Mr. Gedeon prior to the hearing. (*Id.*) She reported that Mr. Gedeon opted to speak on his own behalf at the hearing. (*Id.*) Mr. Gedeon testified that Ms. Freeman never gave him an order to stop, and stated he was knocking on the window because he was cold. (*Id.*) His statement was found to lack credibility based on the video evidence and he was found guilty of the charge. (*Id.* at 6.) Mr. Gedeon seeks money damages for his claims.[7]

---

[6] Also attached to the Complaint is an illegible Inmate Personal Property Record (ECF No. 2 at 7), several commissary receipts (*id.* at 8-11.), several pages of legal citations and excerpts from the Code of Federal Regulations (*id.* at 12-15.)

[7] On September 21, 2022, Mr. Gedeon filed a pleading labeled a motion to amend the complaint. (ECF No. 6.) In the pleading, Mr. Gedeon states that, "since all defendants are members of the FTC [sic, probably "FDC"], the plaintiff request[s] the substitution of a claim under 1983 for a claim under the Federal Tort Claim[s Act], for official capacity suit, and for individual capacity the suit will be conducted under a *Bivens* action." (*Id.* at 1.) Construing the request liberally and in the interest of justice, the Court will deny the motion to amend and rather construe the request as a supplement to the Complaint rather than a superseding amendment since it fails to allege any of the facts Mr. Gedeon included in the Complaint. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading."). (Cont'd)

4

## II. STANDARD OF REVIEW

Mr. Gedeon is granted leave to proceed *in forma pauperis*.[8] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Gedeon is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

(cont'd from prior page) Accordingly, the Court understands Mr. Gedeon to be asserting *Bivens* claims against the individual Defendants.

To the extent Mr. Gedeon has named the Bureau of Prisons and FDCP, since *Bivens* claims may not be brought against federal agencies, *see F.D.I.C. v. Meyer*, 510 U.S. 471, 486-87 (1994), and the United States is the only proper defendant in an FTCA action, *see CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008), all claims against the Bureau of Prisons and FDCP must be dismissed.

[8] Because Mr. Gedeon is a prisoner, he will be required to pay the filing fee in full in installments pursuant to the Prison Litigation Reform Act.

5

## III. DISCUSSION

Mr. Gedeon asserts claims for violation of his civil rights by federal officials. The basis for federal actor liability for constitutional claims is the United States Supreme Court decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) (stating that the "purpose of *Bivens* is to deter individual federal officers from committing constitutional violations" by subjecting them to personal liability). However, the availability of *Bivens* as a cause of action is limited and "the Supreme Court has plainly counseled against creating new *Bivens* causes of action." *Vanderklok v. United States*, 868 F.3d 189, 199 n.8 (3d Cir. 2017) (citing *Minneci v. Pollard*, 565 U.S. 118 (2012) (refusing to extend Eighth Amendment *Bivens* action to individuals working at a private prison); *FDIC v. Meyer*, 510 U.S. 471 (1994) (refusing to extend *Bivens* claim to federal agency defendant); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (stating that the "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 472-73 (internal quotations marks and citations omitted)).

Since the 1971 *Bivens* decision, the Supreme Court "has repeatedly refused to extend *Bivens* actions beyond the specific clauses of the specific amendments [of the Constitution] for which a cause of action has already been implied, or even to other classes of defendants facing liability under those same clauses." *Vanderklok*, 868 F.3d at 200. The Supreme Court has recognized an implied private action against federal officials in only three

6

cases: (1) *Bivens* itself — "a claim against FBI agents for handcuffing a man in his own home without a warrant" under the Fourth Amendment; (2) "a claim against a Congressman for firing his female secretary" under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and, (3) "a claim against prison officials for failure to treat an inmate's asthma" under the Eighth Amendment, *Carlson*, 446 U.S. 14. *But see also Shorter v. United States*, 12 F.4th 366, 372 n.4 (3d Cir. 2021) (noting that the Supreme Court decision in *Farmer v. Brennan*, 511 U.S. 825, 830 (1994), involving a claim against federal prison officials who failed to keep a transgender prisoner safe from sexual assault, had also "recognized" a *Bivens* remedy; thus similar claim was not a new *Bivens* context); *id.*, n.5 ("*Abbasi* neglected to name *Farmer* because it saw that case as falling under the umbrella of *Carlson*"). Because expanding *Bivens* is "a 'disfavored' judicial activity," *see Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017), a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200; *see also Mammana v. Barben*, No. 20-2364, 2021 WL 2026847, at *2 (3d Cir. May 21, 2021) (stating that "while *Bivens* claims are disfavored, they do not automatically fail").

### A. Official Capacity Claims

Mr. Gedeon has named all Defendants in their official as well as individual capacities. The United States Court of Appeals for the Third Circuit has made clear that no *Bivens* claims can properly be brought against a federal actor defendant in his or her official capacity. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir.2007) (explaining that a "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity" (quoting *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir.1987)); *Debrew v. Auman*, 354 F.

App'x 639, 641 (3d Cir. 2009). This is because "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); *see also Malesko*, 534 U.S. at 72; *Meyer*, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Goldstein v. United States Postmaster Gen.*, No. 22-1343, 2022 WL 2467565, at *2 (E.D. Pa. July 6, 2022). Accordingly, all official capacity claims are dismissed with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile.").

### B. Individual Capacity Claims

#### 1. Claim Against Supervisors

Mr. Gedeon names the Justice Department Defendants as well as the Warden and Assistant Warden of FDCP but fails to allege that any of them were personally involved in the actions he describes in his Complaint. To be plausible, a *Bivens*-based claim must allege personal involvement by the named defendant. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed prison officials who were sued "based on their failure to take corrective action when grievances or investigations were referred to them"); *Jackson v. Grondolsky*, No. 09-5617, 2011 WL 13704 at *1 n. 1 (D.N.J. Jan. 3, 2011) (surveying applicable Third Circuit precedent regarding supervisory liability in the prisoner medical treatment context and holding that no cause of action would lie where the only allegation supporting the claim was that the warden failed to take action after being presented with plaintiff's administrative grievances); *Garvey v. Martinez*, No. 08-2217, 2010 WL 569852

8

at \*7 (M.D. Pa. Feb. 11, 2010) (rejecting prisoner's *Bivens* deliberate indifference claim against defendant prison warden where the warden was not personally involved in decisions regarding plaintiff's medical care) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Liability under *Bivens* is personal in nature and attaches only where the defendant's personal involvement in the alleged wrongful conduct is shown through specific allegations of personal direction or actual knowledge and acquiescence. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir.1988) (holding there is no respondeat superior liability in 42 U.S.C. § 1983 cases)). However,

> A government official can be held liable for acts of a subordinate in two ways. First, "personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Supervisory liability can be established "by showing a supervisor tolerated past or ongoing misbehavior." To plead acquiescence, "the supervisor must contemporaneously know of the violation of a plaintiff's rights and fail to take action." "Allegations of 'actual knowledge and acquiescence . . . must be made with appropriate particularity.'" And "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."
> "Second, a supervisor can be liable under [*Bivens*] if he 'implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct.'"

*Acosta v. Democratic City Committee*, 288 F. Supp. 3d 597, 636-37 (E.D. Pa. 2018) (internal citations omitted). A complaint alleging supervisory liability based on policy and practice "'must [first] identify a supervisory policy or practice that the supervisor failed to employ.'" *Mark v. Patton*, 696 F. App'x 579, 582 (3d Cir. 2017) (citations omitted). Then, the plaintiff must allege that "(1) the policy or procedures in effect at the time of the alleged injury created an

9

unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. *Id.* (citation omitted).

Mr. Gedeon has failed to allege that any of the above listed defendants was personally involved in the acts he describes in his Complaint. He also fails to allege any plausible basis for imposing supervisory liability, particularly against the Justice Department Defendants. For these reasons, his claims against them are not plausible. However, Mr. Gedeon will be afforded an opportunity to amend these claims, limited to alleging supervisory liability as to the underlying claims that are dismissed without prejudice, if he can cure the defects the Court has identified.

### 2. Claims Based on Placement in Disciplinary Segregation

Because Mr. Gedeon includes allegations concerning his placement in disciplinary segregation, the Court also will liberally construe the Complaint as attempting to assert a *Bivens* claim based on a Fifth Amendment due process violation against DHO Valentine with regard to this placement. This type of claim is not one previously recognized as an allowable *Bivens* claim and "[w]hether a *Bivens* claim exists in a particular context is 'antecedent to the other questions presented.'" *Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (quoting *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017)). As explained above, because expanding *Bivens* is "a 'disfavored' judicial activity," *see Abbasi*, 137 S. Ct. at 1857, a "rigorous inquiry . . . must be undertaken before implying a *Bivens* cause of action in a new context or against a new category of defendants." *Vanderklok*, 868 F.3d at 200. That inquiry involves determining whether the case presents a new context for a *Bivens* claim that has not been recognized by the Supreme Court

10

and, if so, asking whether "special factors counsel hesitation in expanding *Bivens*." *Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020); *see also Abbasi*, 137 S. Ct. at 1857-58.

The *Bistrian* Court concluded that special factors did not warrant an extension of *Bivens* to the context of prison disciplinary proceedings:

> Unlike Bistrian's failure-to-protect claim, which relates to a specific and isolated event, a punitive-detention claim more fully calls in question broad policies pertaining to the reasoning, manner, and extent of prison discipline. The warden and other prison officials have — and indeed must have — the authority to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is deserved and for how long. *See Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995) (observing, in the § 1983 context, that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile [prison] environment" and thus should limit "the involvement of federal courts in the day-to-day management of prisons"). Detention policies and their application cannot be helpfully reviewed as *Bivens* claims. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" because the problems "are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987) (citation omitted). The Bureau of Prisons, not the judiciary, has the "expertise, planning, and the commitment of resources" necessary for the difficult task of running a correctional facility. *Id.* at 84-85, 107 S. Ct. 2254. Consequently, the task of prison administration "has been committed to the responsibility of [the legislative and executive] branches, and separation-of-powers concerns counsel a policy of judicial restraint." *Id.* at 85, 107 S.Ct. 2254. Ruling on administrative detention policy matters would unduly encroach on the executive's domain. *See Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) ("It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere." (citation omitted)).

*Bistrian*, 912 F.3d at 94-95 (footnotes omitted). Mr. Gedeon's constitutional claims challenging his placement in the SHU are indistinguishable in any meaningful way from the claims at issue in *Bistrian*. Accordingly, *Bivens* does not provide a cause of action for Mr. Gedeon to challenge the constitutionality his placements in the SHU and this claim is dismissed with prejudice.[9]

---

[9] To the extent that Mr. Gedeon alleges he was placed in the SHU for purposes of retaliating against him, this claim is also not plausible because the United States Supreme Court

11

### 3. **Property Loss Claim**

Mr. Gedeon appears to assert a Fourth Amendment claim based on lost property that occurred when he was moved from his usual cell to the SHU. Even if this was an allowable *Bivens* claim, it is not plausible and will be dismissed with prejudice. Property loss caused by the intentional or negligent unauthorized act of a prison official does not give rise to a procedural due process claim where a post-deprivation remedy satisfying minimum procedural due process requirements is available for the loss. *See Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)); *see also Zinermon v. Burch*, 494 U.S. 113, 115 (1990); *Hudson v. Palmer*, 468 U.S. 517 (1984); *Holman v. Hilton*, 712 F.2d 854, 856 [ (3d Cir.1983). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of a federal government official. An action under the FTCA was available to Mr. Gedeon as a remedy for his alleged property loss at the hands of prison officials. *See Akervik v. Ray*, 24 F. App'x 865, (10th Cir. 2001) (dismissing a *Bivens* due process claim by federal prisoner against prison officials for loss of art work because the FTCA provides an adequate post-deprivation remedy); *Slade v. Petrovsky*, 528 F. Supp. 99 (M.D.Pa.1981) (same). Because the FTCA provides all the process that is due for Mr. Gedeon's alleged property loss, his deprivation of property claim is dismissed with prejudice.[10]

---

has not permitted an extension of *Bivens* for retaliation claims. *Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("We also conclude that there is no *Bivens* cause of action for Boule's First Amendment retaliation claim.")

[10] Mr. Gedeon's motion to amend the complaint disavowed any claim under the FTCA. Because he may have not understood that his property loss claim can only be asserted against the United States in a claim under the FTCA, the Court will permit Mr. Gedeon to include such a claim if he decides to file an amended complaint. However, a plaintiff must exhaust administrative remedies as a prerequisite to filing a lawsuit under the FTCA. *See* 28 U.S.C. § 2675(a). In other words, "[n]o claim can be brought under the FTCA unless the plaintiff first

12

### 4. Verbal Threat Claim

Mr. Gedeon asserts that an unidentified staff member told him "you think we violated your rights, more violation is about to happen here (in the SHU)." (*Id.* at 3 (parenthetical in original).) To the extent Mr. Gedeon seeks to raise a claim based on a verbal threat, the claim must be dismissed. The allegation that Mr. Gedeon received a verbal threat does not state a plausible claim because verbal threats or taunts, without more, are insufficient to violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Because verbal threats are insufficient and there is no assertion that any defendant ever acted on the alleged threat, any attempt to amend the verbal threat claim would be futile and the dismissal will be with prejudice.

---

presents the claim to the appropriate federal agency and the agency renders a final decision on the claim." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015); *see also Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018) (stating that "[u]nder 28 U.S.C. § 2675(a), a plaintiff may not bring a claim under the FTCA unless he 'first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim.'") (quoting *Shelton*, 775 F.3d at 569). This requirement is "jurisdictional and cannot be waived." *Shelton*, 775 F.3d at 569. Therefore, a plaintiff "must . . . plead administrative exhaustion in an FTCA case." *Colbert v. U.S. Postal Serv.*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011); *see also McFadden v. United States*, No. 19-2900, 2021 WL 1088307, at *3 (E.D. Pa. Mar. 22, 2021) (discussing how to exhaust administrative remedies with the BOP prior to pursuing a FTCA claim); *see also* 28 C.F.R. § 543.31. If Mr. Gedeon has not exhausted his remedies, he should raise the claim in a new civil action after doing so, rather than include it in an amended complaint in this case.

### 5. Refusal of Food Claim

Mr. Gedeon alleges that once he was assigned to a cell in the SHU, an unidentified staff member refused him food stating that he had been offered and refused food earlier, which Mr. Gedeon asserts was untrue. This allegation is best construed as an Eighth Amendment deliberate indifference claim. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) (stating that food is a life necessity, the denial of which can constitute a deliberate indifference). "To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberately indifferent to inmate health or safety.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834 (alterations omitted)). Mr. Gedeon's allegation that he was denied food on one occasion, whether because he had earlier refused the food that day or otherwise, fails the "objectively serious" part of the deliberate indifference test. He alleges only an isolated incident, occurring while he was being transferred from one housing assignment to another, and fails to allege he suffered any injury arising from the missed meal. He also fails to allege he was malnourished or otherwise was denied a nutritious diet. Accordingly, this claim is also dismissed with prejudice.[11]

### 6. Sixth Amendment Access to Counsel Claim

Mr. Gedeon asserts he was denied a phone call to his defense counsel for about six weeks, his requests to use the law library were denied, and a computer used to view discovery

---

[11] To the extent Mr. Gedeon's allegations about being given the thinner of two available mattresses is also intended to assert a deliberate indifference claim, this allegation also fails the objectively serious test and is dismissed with prejudice as not plausible.

has not been working for a month. This Sixth Amendment access to counsel claim must also be dismissed because it is not a plausible extension of *Bivens* liability. Several courts, including the United States Court of Appeals for the Third Circuit, have held that a Sixth Amendment claim for the alleged violation of the right to counsel does not fall within any of the existing contexts for which the Supreme Court has implied a *Bivens* remedy. *See, e.g., Sharratt v. Murtha*, 437 F. App'x 167, 170 (3d Cir. 2011) ("We doubt that a purported violation of Sixth Amendment rights could be remedied under *Bivens*."). Moreover, courts have held that this is not a proper extension of *Bivens*. *See Montgomery v. Ferentino*, No. 20-3114, 2021 WL 3204843, at *2 (6th Cir. Feb. 24, 2021) ("Montgomery has not provided this court with any authority supporting an extension of the *Bivens* remedy here, and other courts have expressed doubt over whether an alleged violation of the Sixth Amendment is cognizable under *Bivens*."); *Reyes v. Sedillo*, 222 F. App'x 753, 754 n.2 (10th Cir. 2007). Thus, this claim is also dismissed with prejudice.

### 7. Access to Drinking Water

Mr. Gedeon asserts he was assigned to a cell without a sink, had to wash and brush his teeth over the toilet, was not allowed out of his cell for long periods, and had no access to water to drink. This claim falls within the Eighth Amendment *Bivens* extension recognized in *Carlson* and *Farmer*, and asserts the same type of claim based on a life necessity recognized as plausible in *Tillman*, 221 F.3d at 418. However, the claim cannot proceed as pled because Mr. Gedeon fails to attribute the denial of drinking water to any of the named Defendants, even as a John Doe. Accordingly, the claim must be dismissed, but Mr. Gedeon will be afforded an opportunity to amend the claim to name a defendant who was personally responsible for the alleged violation.

### 8. Denial of Medical Care

Mr. Gedeon also asserts facts suggesting that he was denied medical care at FDCP for a variety of symptoms he experienced and was told by an unnamed person that there was nothing wrong with him. (Compl. at 2.) The Court will dismiss the claim based on denial of medical care because Mr. Gedeon has not identified a defendant who was personally involved in denying him medical care.[12] Mr. Gedeon may file an amended complaint with regard to this claim as well.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss certain of Mr. Gedeon's claims with prejudice and the balance of the claims without prejudice. All claims against the Bureau of Prisons and FDCP will be dismissed with prejudice. Mr. Gedeon's constitutional claims based on property loss, verbal threats and the denial of food on one occasion will also be dismissed with prejudice. All official capacity claims, all claims against R. Kistler and Dr. Dalmasi, and all claims based on supervisor liability will be dismissed without prejudice. Because the Court cannot say at this time that Mr. Gedeon can never plausibly reallege the denial of drinking water and denial of medical care claims, as well as any claims based on supervisory liability that are

---

[12] The Court notes that Mr. Gedeon names R. Kistler and Dr. Dalmasi as defendants. These may be medical personnel at FDC Philadelphia but, other than list them in the caption of the Complaint, Mr. Gedeon fails to allege any acts of either Defendant that may have violated his rights. The Court will not speculate that these are defendants involved with any other claim remaining in this case and R. Kistler and Dr. Dalmasi will be dismissed without prejudice.

related to those specific claims, he will be granted leave to file an amended complaint.

An appropriate order follows providing additional information on filing an amended complaint.

BY THE COURT:

GENE E.K. PRATTER, J.