**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PASCAL GEDEON,                           :
    Plaintiff                        :
                       :
    v.                               :     CIVIL ACTION NO. 22-CV-3595
                       :
THE ATTORNEY GENERAL, *et al.*,          :
    Defendants                       :

**MEMORANDUM**

PRATTER, J.                                        DECEMBER ⸝, 2022

    In a prior Memorandum and Order, the Court dismissed several claims brought by Pascal Gedeon, a federal pretrial detainee.[1]  The Court determined that all claims Mr. Gedeon asserted against the Bureau of Prisons and the Federal Detention Center Philadelphia ("FDCP"), all official capacity claims, and Mr. Gedeon's constitutional claims based on property loss, verbal threats, placement in disciplinary segregation, Sixth Amendment access to counsel, being given a too thin mattress, and the denial of food on one occasion were subject to dismissal with prejudice.  His claim that he was denied access to drinking water, his denial of medical care claim, and all claims based on supervisor liability related to those two discreet claims were dismissed without prejudice.  Mr. Gedeon was granted limited leave to file an amended complaint to attempt to cure the defects the Court identified in his claims that he was denied drinking water and medical care, as well as any claims based on supervisory liability related to those specific claims.

---

[1] *See Gedeon v. The Attorney General*, No. 22-3595, 2022 WL 7570749 (E.D. Pa. Oct. 12, 2022) ("the October Memorandum").

Mr. Gedeon has now filed an Amended Complaint (ECF No. 19 ("Am. Compl.")) in which he again asserts *Bivens* claims.[2]  Named as defendants in the caption of the Amended Complaint are the United States; the Attorney General; the Warden of FDCP; Officers Freeman, Cole, Mendek, and Flannary; medical providers R. Kistler, and Dr. Dalmasi; Lieutenant Jones; and 8 unknown correctional officers.  He again names each defendant in his or her official and individual capacity.  (*Id.* at 1.[3])  While Mr. Gedeon does not cite to specific constitutional rights that he contends have been violated, he alleges he has suffered mental injury in the form of emotional distress, anxiety, stress, pain, suffering, embarrassment, humiliation, and has suffered a property loss for which he seeks injunctive, declarative, and monetary relief.  (*Id.* at 3.)  For the following reasons, the Amended Complaint will be dismissed in part and the claims that pass statutory screening under 28 U.S.C. § 1915(e)(2)(B) will be served upon defendants for a responsive pleading.

## I.  FACTUAL ALLEGATIONS

Mr. Gedeon again avers he is a pretrial detainee in federal custody at FDCP.  He alleges that, since July 2021, he has been trying to receive medical attention from Defendants R. Kistler and Dr. Dalmasi for allergy symptoms including headache, palpitations, shortness of breath, bloating, sleepiness, chest pain, dizziness, and nasal congestion.  He asserts that on many

---

[2] The October Memorandum was filed on October 12, 2022.  Mr. Gedeon filed a "Motion to Vacate the Order Dismissing the Claims," (ECF No. 16) on November 16, 2022, and a "Motion to Clarify Claims" (ECF No. 17) on November 23, 2022.  Both Motions seek reconsideration of the Court's rulings in the October Memorandum.  Local Rule 7.1(g) provides that a motion for reconsideration must be filed within 14 days after the entry of the order concerned, other than those governed by Federal Rules of Civil Procedure 59(e).  Neither of Mr. Gedeon's motions qualifies as a one made pursuant to Rule 59(e) because the October Memorandum was not a final order that entered judgement.  Both Motions are untimely under Local Rule 7.1(g) and are denied on that basis.  Mr. Gedeon also filed his Amended Complaint on November 23, 2022, which is now the governing pleading in this matter.

[3] The Court adopts the pagination applied by the CM/ECF docketing system.

occasions he has awoken from sleep on the floor.  He was told by an unnamed person that he suffers only from anxiety.  After 12 months of complaining about his symptoms, allergy testing revealed Mr. Gedeon is allergic to eggs, peanuts, yeast, and wheat.  He alleges the delay in receiving the testing was excessive.

Mr. Gedeon also repeats allegations concerning an incident that took place on January 25, 2022.  Defendant Freeman allegedly locked Mr. Gedeon and other inmates in an outdoor recreation area for over two hours.  He allegedly told Ms. Freeman that the conditions in the recreation area were inhumane, apparently because it was a cold day, and Ms. Freeman ordered Mr. Gedeon sent to the Special Housing Unit ("SHU").  It appears that Mr. Gedeon broke a window to protest being kept outside, but Ms. Freeman sent him to the SHU "before even realizing that the window was [broken], and claimed that she gave me a direct order to stop banging."  (*Id.* at 6.)  Ms. Freeman allegedly took Mr. Gedeon's property but gave him a receipt "showing that I owed [sic, probably "owned"] nothing, while I shop from commissary regularly."  (*Id.*)

Mr. Gedeon received a hearing for his infraction that was conducted by an official named Valentine.[4]  (*Id.* at 7.)  Mr. Valentine allegedly did not allow him to call witnesses "to testify that I took reasonable step [sic] to solve the problem, and officer refused to help."  (*Id.*)  Mr. Gedeon allegedly stated at the hearing that Ms. Freeman called for backup officers "before realizing the window was shattered to retaliate," but Mr. Valentine changed his statement "to make it seem that I said nothing that was relevant."  (*Id.*)  Mr. Valentine reviewed video evidence of the

---

[4] Mr. Gedeon does not list this official as a defendant in the caption of his Amended Complaint and Mr. Ventine is not specifically identified in the body of the Amended Complaint as a defendant.  The Order that accompanied the October Memorandum specified that Mr. Gedeon must identify all defendants in the caption of the amended complaint in addition to identifying them in the body of the amended complaint.  (ECF No. 10 at 3.)

incident "and realized that Ms. Freeman was not present when the window was broken, and she

was ignoring me." (*Id.* at 7-8.)  Yet, Mr. Valentine excused Ms. Freeman's allegedly false

statement by finding it "too repetitive." (*Id.* at 8.)  As a result of the incident and hearing, Mr.

Gedeon was on commissary restriction for 90 days, and could not replace his wide-toothed comb

and hair ties that he claims are "necessary articles for maintaining personal hygiene protected by

[the prisoner hygiene regulation found in 28 C.F.R. §] 551.6.  As [a] black inmate with long,

kinky, thick hair, the small comb provided by the institution cannot be used on my hair." (*Id.*)

He alleges there was no penological justification for the commissary restriction that prevented

him from buying a replacement comb, which "affect[s] only black inmates, since other groups

can easily use the small combs," that the regulation found at 28 C.F.R. § 551.1 prohibits

discrimination with regard to inmate hair, but the Warden "approved [the commissary

restriction] anyway." (*Id.*)

Mr. Gedeon also asserts that when he was taken to the SHU, a female staff member asked

him why the window was broken.  He told that staff member that he was kept outside in the cold

for two hours and Ms. Freeman refused to help him. (*Id.* at 9.)  He told the staff member he "had

no choice than breaking the window to escape from the cold since it is large enough to allow my

body to pass through." (*Id.*)  Another unidentified correctional officer told Mr. Gedeon, "oh, you

think we violated your rights, more violations is about to happen here (in the SHU)."

(parenthetical in original).  When he was assigned to a cell, a Correctional Officer possibly

named Roland refused to feed him a meal because Mr. Roland offered Mr. Gedeon food

previously and Mr. Gedeon refused it. (*Id.* at 10.)  That same officer gave him the thinner of two

available mattresses. (*Id.*)  While housed in the SHU, Mr. Gedeon was refused permission

several times by Defendant Cole to make legal calls for a period of six weeks. (*Id.*)  He was also

4

denied access to the law library during those six weeks by COs named Max, Floyd, and Roland. (*Id*. at 10-11.) He was offered varying excuses for why he could not use the facilities. (*Id*. at 11.) When he reported to Defendant Lieutenant Jones that the "discovery station" – apparently a facility in the law library – was out of order since March 2022, Lt. Jones responded that he knew about the problem but, according to Mr. Gedeon, "let it go on for months." (*Id*. at 12.)

Finally, Mr. Gedeon repeats his allegation that he was housed in a cell without a sink and no access to drinking water "for extended hours." (*Id*. at 11.) Defendants Mendek and Flannary were allegedly aware the cell had no water and failed to move him to a different cell or replace the sink. (*Id*. at 11-12.)

## II.   STANDARD OF REVIEW

Because Mr. Gedeon has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Gedeon is proceeding *pro se*, the Court construes

his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F. 3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245).

## III.   DISCUSSION

### A.   Claims Already Dismissed With Prejudice

The Court previously dismissed with prejudice all official capacity claims, and Mr. Gedeon's individual capacity constitutional claims based on property loss, verbal threats, placement in disciplinary segregation, a violation of his Sixth Amendment access to counsel, being given a too thin mattress, and the denial of food on one occasion. Nonetheless, in the Amended Complaint Mr. Gedeon has again named the defendants in their official, as well as individual, capacities and has repeated the factual allegations related to these already dismissed claims. To the extent he intended to reassert those claims, they are again dismissed with prejudice for the reasons previously stated in the Court's earlier Memorandum. *See* Document No. 9, on the docket for this case.

### B.   Denial of Medical Care

Mr. Gedeon asserts that since July 2021 he has been trying to secure medical attention from Defendants R. Kistler and Dr. Dalmasi. He told R. Kistler he suffered allergy symptoms but was told he suffered only from anxiety. After 12 months, he received allergy testing allegedly revealing he is allergic to eggs, peanuts, yeast, and wheat. He asserts that the 12-month delay was excessive and amounted to a denial of medical care. The Court concludes that this

claim is plausible and will direct service against R. Kistler and Dr. Dalmasi. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (acknowledging a *Bivens* claim for denial of medical care involving deliberate indifference to a serious medical condition); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (holding that deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.").

### C.    Access to Drinking Water

Mr. Gedeon reasserts his claim that he was denied access to drinking water.  He alleges that he was housed in a cell without a sink and had no access to drinking water "for extended hours," and that Defendants Mendek and Flannary were aware the cell had no water and failed to move him to a different cell or replace the sink.  Because the Court has already concluded that this claim may  fall within a recognized Eighth Amendment *Bivens* exception, *see* October Memorandum, 2022 WL 7570749, at *7, and Mr. Gedeon has now identified those individuals who allegedly were personally responsible for the alleged violation, the claim will be served on Defendants Mendek and Flannary for a responsive pleading.

### D.    Equal Protection Claim

Mr. Gedeon also appears to raise a new claim not included in the original Complaint, namely an equal protection claim against the Warden of FDC Philadelphia based on Mr. Gedeon's inability to purchase a wide-toothed comb from the prison commissary as a result of his 90-day commissary restriction.  Mr. Gedeon cites the regulation governing prisoner hygiene articles, 28 C.F.R. § 556.1, which states "The Warden shall make available to an inmate those

7

articles necessary for maintaining personal hygiene." 28 C.F.R. § 551.6.[5]  He contends there was

no penological justification for the commissary restriction and the restriction "affect[s] only

black inmates, since other groups can easily use the small combs," but the Warden "approved it

anyway." This claim is not plausible and will be dismissed.

The United States Supreme Court has allowed a *Bivens* action to redress a violation of

the equal protection component of the Due Process Clause of the Fifth Amendment. *See Davis v.*

*Passman,* 442 U.S. 228 (1979).  However, even assuming, without deciding, the availability of a

*Bivens* remedy here, the violation of a statute or regulation does not suffice to create liability

under *Bivens* unless the statute or regulation itself provides the basis for a claim of a

constitutional right. *Arcoren v. Peters,* 829 F.2d 671, 676-77 (8th Cir. 1987) ("A violation of a

statute or a regulation does not rise to a constitutional level unless the statutory or regulatory

provisions supply the basis for the claim of a constitutional right.") (citing *Davis v. Scherer,* 468

U.S. 183, 193-94 & n. 12 (1984) (stating that officials sued for constitutional violations do not

lose their qualified immunity merely because their conduct violates some statutory or

administrative provision)).  *See also Walker v. Coffey*, 905 F.3d 138, 150, 150 n. 63 (3d Cir.

2018) and *Eades v. Wetzel,* 841 F. App'x. 489, 491 n. 2 (3d Cir. 2021).Moreover, to assert a

plausible equal protection claim, a prisoner must allege "that he was treated differently than

other similarly situated inmates, and that this different treatment was the result of intentional

discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839

---

[5] The regulations also provide that "The Bureau of Prisons permits an inmate to select the hair style of personal choice, and expects personal cleanliness and dress in keeping with standards of good grooming and the security, good order, and discipline of the institution." 28 C.F.R. § 551.1.  A warden may not restrict hair length if the inmate keeps it neat and clean, and must "make available to an inmate hair care services which comply with applicable health and sanitation requirements." *Id.*, § 551.4.

F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).

The requirement that the warden of a federal prison provide inmates with necessary hygiene materials does not itself provide a basis for a claim of a constitutional right, much less on one emanating from the wide-tooth style of a comb. To the extent that the requirement that a warden permit inmates to wear their hair as they prefer provides a basis for a constitutional right, Mr. Gedeon does not allege that maintaining his hair as he prefers is based on a religious or other constitutionally protected requirement. Mr. Gedeon asserts only that his commissary restriction denied him access to a wide-toothed comb and hair ties needed by black inmates with long, kinky, thick hair, and that he could not use the small comb provided by the institution. He fails, however, to allege that he was treated differently from similarly situated persons, namely, that other persons confined in the SHU were not denied commissary privileges in the same manner in which he was, that any differential treatment was the result of intentional discrimination, or that the Warden was motivated by racial animus when he imposed the commissary restriction. Accordingly, this claim, along with the balance of the claims associated with Mr. Gedeon's placement in the SHU, is dismissed. Because Mr. Gedeon has already had two opportunities to allege claims associated with his placement in the SHU, the dismissal now will be with prejudice. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d

Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *Robinson v. Delbalso*, No. 22-2378, slip op. at 5 (3d. Cir. Nov. 28, 2022) (*per curiam*) ("[B]ecause Robinson has had two opportunities to amend his complaint, declining to grant further leave to amend was proper.").

## IV.    CONCLUSION

For the foregoing reasons, Mr. Gedeon's individual capacity claims against Defendants R. Kistler and Dr. Dalmasi for delay in treating his allergy symptoms and his individual capacity claims against Defendants Mendek and Flannary for placing him in a cell with no access to drinking water will be served for a responsive pleading.  The balance of the Amended Complaint will be dismissed with prejudice and the Clerk of Court will be directed to terminate all other named defendants.[6]  An appropriate order is attached.

BY THE COURT:

GENE E.K. PRATTER, J.

---

[6] Mr. Gedeon does not sufficiently allege that these remaining Defendants were involved in any violations of his rights, so he has not stated a plausible claim against them.